**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

FEDERAL TRADE COMMISSION;

STATE OF ALABAMA;

STATE OF ARKANSAS, *ex rel.* Attorney General Tim Griffin;

COLORADO ATTORNEY GENERAL;

OFFICE OF THE ATTORNEY GENERAL, STATE OF FLORIDA, DEPARTMENT OF LEGAL AFFAIRS;

PEOPLE OF THE STATE OF ILLINOIS;

STATE OF IOWA, *ex rel.* Brenna Bird, Attorney General;

STATE OF KANSAS, *ex rel.* Kris W. Kobach, Attorney General;

STATE OF LOUISIANA;

STATE OF MISSISSIPPI;

STATE OF NEBRASKA, *ex rel.* Michael T. Hilgers, Attorney General;

STATE OF OHIO, *ex rel*. Attorney General D. Andrew Wilson;

STATE OF OKLAHOMA;

COMMONWEALTH OF PENNSYLVANIA; by Attorney General David W. Sunday, Jr.;

STATE OF SOUTH CAROLINA, *ex. rel.* Alan Wilson, in his official capacity as Attorney General of the State of South Carolina;

STATE OF TENNESSEE, *ex rel*. Jonathan Skrmetti, Attorney General and Reporter;

Case No. 2:26-cv-1267

**STIPULATED ORDER FOR PERMANENT INJUNCTION, MONETARY JUDGMENT, AND OTHER RELIEF**

UTAH DIVISION OF CONSUMER PROTECTION; AND

STATE OF WISCONSIN,

Plaintiffs,

v.

FAMILY DOLLAR STORES, LLC, also d/b/a Family Dollar, a limited liability company,

Defendant.

Plaintiff, the Federal Trade Commission ("Commission" or "FTC"); States of Alabama, Arkansas, Iowa, Kansas by and through the Attorney General, Louisiana, Mississippi, Nebraska, Ohio, Oklahoma, South Carolina, and Tennessee; the Colorado Attorney General; The Office of the Attorney General James Uthmeier, State of Florida, Department of Legal Affairs; the People of the State of Illinois; the Commonwealth of Pennsylvania; the Utah Division of Consumer Protection; and the State of Wisconsin, acting by and through the Wisconsin Department of Justice, filed their Complaint for Permanent Injunction, Monetary Judgment, Civil Penalties, and Other Relief ( "Complaint"), for a permanent injunction, monetary relief, and other relief in this matter, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. § 45(a), and Section 521 of the Gramm-Leach-Bliley Act ("GLBA"), 15 U.S.C. § 6821; Alabama's Deceptive Trade Practices Act, Ala. Code § 8-19-1 *et seq.*; the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101 *et seq.*; the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101 *et seq.*; the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204 *et seq.*; the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.*; the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1 *et seq.*; the

Iowa Consumer Fraud Act, Iowa Code §714.16; the Kansas Consumer Protection Act, Kan. Stat. Ann. § 50-623 *et seq.*; the Louisiana Unfair Trade Practices and Consumer Protection law, La. Rev. Stat. Ann. § 51:1401, *et seq.*; the Louisiana False Advertising Law, La. Rev. Stat. Ann. § 51:411, *et seq*.; the Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1 *et seq*.; the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-302; the Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01 *et seq.*; the Oklahoma Consumer Protection Act, Okla Stat. tit. 15 § 751 *et seq*.; the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq*.; the South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10 *et seq.*; the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, *et seq*.; the Utah Consumer Sales Practices Act, Utah Code Ann. § 13-11-1 *et seq*.; and the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18. Plaintiffs and Defendant stipulate to the entry of this Stipulated Order for Permanent Injunction, Monetary Judgment, and Other Relief ("Order") to resolve all matters in dispute in this action between them.

THEREFORE, IT IS ORDERED as follows:

**FINDINGS**

1. This Court has jurisdiction over this matter.

2. The Complaint charges that Defendant participated in deceptive acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, the GLBA, 15 U.S.C. §§ 6801-6809, 6821-6827; Alabama's Deceptive Trade Practices Act, Ala. Code § 8-19-1 *et seq.*; the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101 *et seq.*; the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101 *et seq.*; the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204 *et seq*.; the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.*; the Illinois Uniform Deceptive Trade Practices

Act, 815 Ill. Comp. Stat. 510/1 *et seq.*; the Iowa Consumer Fraud Act, Iowa Code §714.16; the Kansas Consumer Protection Act, Kan. Stat. Ann. § 50-623 *et seq.*; the Louisiana Unfair Trade Practices and Consumer Protection law, La. Rev. Stat. Ann. § 51:1401, *et seq.*; the Louisiana False Advertising Law, La. Rev. Stat. Ann. § 51:411, *et seq*.; the Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1 *et seq*.; the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-302; the Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01 *et seq*.; the Oklahoma Consumer Protection Act, Okla Stat. tit. 15 § 751 *et seq*.; the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq*.; the South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10 *et seq.*; the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, *et seq*.; the Utah Consumer Sales Practices Act, Utah Code Ann. § 13-11-1 *et seq*.; and the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18 in the operation of Family Dollar stores, including by charging more at the register than the price advertised on the shelf, on the product, or in other advertisements.

3. Defendant neither admits nor denies any of the allegations in the Complaint, except as specifically stated in this Order. Only for purposes of this action, Defendant admits the facts necessary to establish jurisdiction.

4. Defendant waives any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree to bear their own costs and attorney fees.

5. Defendant waives all rights to appeal or otherwise challenge or contest the validity of this Order.

**DEFINITIONS**

For the purpose of this Order, the following definitions apply:

A. “**Clear(ly) and conspicuous(ly)**” means that a required disclosure is easily noticeable (i.e., difficult to miss) and easily understandable by reasonable consumers, including in all of the following ways:

1. In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented. In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

2. A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

3. An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for reasonable consumers to easily hear and understand it.

4. In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

5. On a product label, the disclosure must be presented on the principal display panel.

6. The disclosure must use diction and syntax understandable to reasonable consumers and must appear in each language in which the representation that requires the disclosure appears.

7. The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

8. The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

9. When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "reasonable consumers" includes members of that group.

B. "**Consumer Redress Fund**" means the program through which Defendant or its independent, third-party claims administrator will distribute Redress Payments to Eligible Consumers in accordance with Sections VIII.A.1, X, and XI of this Order. The Consumer Redress Fund does not include the Discount Program.

C. "**Defendant**" means Family Dollar Stores, LLC and its successors and assigns.

D. "**Discount Program**" means the program under which Defendant provides consumers with a fixed reduction in the price of goods or services sold at Defendant's stores, excluding alcohol, tobacco, gift cards, and other prepaid cards. Price reductions or discounts will not count toward the Discount Program if resulting from (i) Defendant's other planned promotions or pricing events, including discounts or promotions advertised in weekly circulars or offered by specific stores (e.g., regional promotions, manager specials or promotion), (ii) manufacturer promotions or coupons, or (iii) coupons or other promotions in Defendants' mobile application.

E. "**Eligible Consumer**" means any consumer who made one or more purchase(s) from Defendant from January 1, 2023 through October 1, 2026.

F. "**Plaintiffs**" means the Federal Trade Commission and the State Plaintiffs, collectively.

G. "**Redress Payments**" means the issuance of redress to Eligible Consumers from

the Consumer Redress Fund through any payment method approved by the Associate Director of Enforcement, Bureau of Consumer Protection, Federal Trade Commission.

H. "**Reportable Incident**" means, beginning 90 days after entry of the order: (1) any instance in which during any rolling twelve-month period after entry of the Order, at least ten percent of Defendant's stores located in any state that is a party to this Consent Order fail a governmental pricing audit; or (2) any instance in which during any rolling twelve-month period after entry of the Order, at least ten percent of Defendant's stores nationwide that undergo a governmental pricing audit fail such audits.

I. "**State Plaintiffs**" means the States of Alabama, Arkansas, Florida, Iowa, Kansas, Louisiana, Mississippi, Nebraska, Ohio, Oklahoma, South Carolina, Tennessee and Wisconsin; the Commonwealth of Pennsylvania by and through its Attorney General; the Colorado Attorney General; the People of the State of Illinois; and the Utah Division of Consumer Protection.

## ORDER

## I. PROHIBITION AGAINST MISREPRESENTATIONS

IT IS ORDERED that Defendant, Defendant's officers, agents, employees, and attorneys and all others in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with advertising, marketing, promoting, offering for sale, or sale of any good or service are permanently restrained and enjoined from misrepresenting or assisting others in misrepresenting, expressly or by implication, the price of any individual good or service or any other fact material to consumers.

## II. PRICING ACCURACY PROGRAM

IT IS FURTHER ORDERED that Defendant, within 90 days of entry of this Order, must establish and implement, and thereafter maintain, a comprehensive pricing accuracy program

(hereinafter, “Pricing Accuracy Program”) that promotes the accuracy of its advertised prices for goods or services offered for sale or sold in Defendant’s stores. To satisfy this requirement, Defendant must, at a minimum:

A. Document in writing the content, implementation, and maintenance of the Pricing Accuracy Program;

B. Designate a qualified employee to coordinate and be responsible for the Pricing Accuracy Program (hereinafter, “Qualified Individual”);

C. Require the Qualified Individual to provide the written Pricing Accuracy Program and any written evaluations thereof, or updates thereto, to Defendant’s board of directors or governing body or, if no such board or equivalent governing body exists, to a senior officer of Defendant responsible for Defendant’s Pricing Accuracy Program at least once every twelve (12) months;

D. Design, implement, maintain, and document safeguards to ensure the accuracy of advertised prices for goods or services offered for sale or sold in Defendant’s stores. Such safeguards must also include:

1. Policies and procedures for all stores that (a) consumers will be charged the lowest price displayed or otherwise advertised in shelf labels, signage, or digital advertising (hereinafter, “Lowest Price Policy”); and (b) consumers are entitled to a price adjustment and/or refund in instances where they are charged a price higher than what the price displayed or otherwise advertised in shelf labels, signage, or digital advertising at the time of sale (hereinafter, “Price Adjustment Policy”);

2. Displaying signage of at least 8.5" x 11", in full color, posted on or adjacent to store registers, describing the Lowest Price Policy and Price Adjustment Policy. This information must be displayed Clearly and Conspicuously;

3. Policies and procedures establishing that prices at "point of sale" systems cannot update to higher prices until Defendant's employees or agents at a store confirm that any new prices are correctly advertised;

4. Implementation of technical measures to log and monitor whether advertised prices are accurate at Defendant's stores, including ensuring that any print or shelf labels containing updated prices have been printed and affixed;

5. Training of all store employees, district managers, regional directors, and zone vice presidents, at least once every twelve (12) months, on how to ensure advertised prices are accurate, honor the lowest advertised price in the event a consumer identifies an inaccurate price, immediately update any incorrect advertised prices, and comply with the terms of this Order;

6. Training of all field leaders, at least once every twelve (12) months on best practices to ensure pricing accuracy in stores, along with Family Dollar policies and procedures on pricing;

7. Policies and procedures to ensure the timely investigation of a report of a pricing inaccuracy in any store and the timely remediation of pricing inaccuracies;

8. Policies and procedures to ensure immediate notification to field leaders and remediation of stores that have failed a regulatory inspection related to pricing accuracy;

9. Market visits, at least monthly, by Family Dollar employees reporting, directly or indirectly, to the Qualified Individual responsive for Defendant's Pricing Accuracy

Program to monitor store performance on pricing and to engage with store employees and field leaders on the importance of pricing accuracy;

10. Presentations, on at least an annual basis, to store field leadership on pricing accuracy and pricing policies and programs during business reviews and at any annual field leadership summit;

11. Key performance indicators ("KPIs") to track performance with the Pricing Accuracy Program, with periodic reporting (on at least a quarterly basis) to the Qualified Individual;

12. Program to recognize stores, store associates, and field leaders for exemplifying strong performance with respect to pricing accuracy; and

13. Participation in the National Council on Weights and Measures to share and learn best practices with respect to pricing accuracy.

E. Conducting, on an annual basis, at least two (2) randomly scheduled, unannounced pricing audits of every one of Defendant's stores, by an individual or entity who does not work at that store, using procedures and standards generally accepted for conducting pricing audits. Two audits of each store must take place at least three (3) months apart;

F. Evaluate and, if appropriate, adjust the Pricing Accuracy Program in light of any material changes to a Defendant's operations or business arrangements, a Reportable Incident, or any other circumstances that Defendant or its officers, agents, or employees know or have reason to know may have a material impact on the effectiveness of the Pricing Accuracy Program or any of its individual safeguards. At a minimum, Defendant must evaluate the Pricing Accuracy Program at least once every twelve (12) months and modify the Pricing Accuracy Program, if appropriate, based on the results; and

G. Ensure consumers are offered itemized receipts showing the price charged for each good or service that consumer purchased, any applicable discounts the consumer received for that individual item, and the total price paid for all goods or services. These receipts must be sufficiently legible and durable, including, where physically printed, through the use of sufficient ink and paper, to enable consumers to identify and understand the information described in this subsection.

## III. THIRD PARTY PRICING ACCURACY ASSESSMENTS

IT IS FURTHER ORDERED that Defendant must obtain initial and annual assessments ("Assessments"):

A. The Assessments must be obtained from a qualified, objective, independent third-party professional ("Assessor"), who: (1) uses procedures and standards generally accepted in the profession; (2) conducts an independent review of the Pricing Accuracy Program; and (3) retains all documents relevant to each Assessment for 5 years after completion of such Assessment and will provide such documents to the Commission within 10 days of receipt of a written request from a representative of the Commission. No documents may be withheld by the Assessor on the basis of a claim of confidentiality, proprietary or trade secrets, work product protection, attorney client privilege, statutory exemption, or any similar claim.

B. For each Assessment, Respondents must provide the Associate Director for Enforcement for the Bureau of Consumer Protection at the Federal Trade Commission with the name, affiliation, and qualifications of the proposed Assessor, whom the Associate Director shall have the authority to approve in their sole discretion.

C. The reporting period for the Assessments must cover: (1) the first twelve months after implementation of the Pricing Accuracy Program required by Section II of this Order for

the initial Assessment; and (2) each twelve-month period thereafter for four (4) additional years after entry of the Order.

D. Each Assessment must, for the entire assessment period:

1. Determine whether Defendant has implemented and maintained the Pricing Accuracy Program required by Section II of this Order;

2. Assess the effectiveness of Respondents' implementation and maintenance of sub-sections D.1-13 of Section II of this Order;

3. Identify any gaps or weaknesses in, or instances of material noncompliance with, the Pricing Accuracy Program;

4. Address the status of gaps or weaknesses in, or instances of material noncompliance with, the Pricing Accuracy Program that were identified in any prior Assessment required by this Order; and

5. Identify specific evidence (including, but not limited to, documents reviewed, sampling and testing performed, and interviews conducted) examined to make such determinations, assessments, and identifications, and explain why the evidence that the Assessor examined is (a) appropriate for assessing an enterprise of the business's size, complexity, and risk profile; and (b) sufficient to justify the Assessor's findings. No finding of any Assessment shall rely primarily on assertions or attestations by Defendant's management. The Assessment must be signed by the Assessor, state that the Assessor conducted an independent review of the Pricing Accuracy Program and did not rely primarily on assertions or attestations by Defendant's management, and state the number of hours that each member of the assessment team worked on the Assessment. To the extent Defendant revises, updates, or adds one or more safeguards required under Section II of the Order in the middle of an Assessment period, the Assessment

must assess the effectiveness of the revised, updated, or added safeguard(s) for the time period in which it was in effect, and provide a separate statement detailing the basis for each revised, updated, or additional safeguard.

E. Each Assessment must be completed within 60 days after the end of the reporting period to which the Assessment applies. Unless otherwise directed by a Commission representative in writing, Defendant must submit an unredacted copy of the initial Assessment and a proposed redacted copy suitable for public disclosure of the initial Assessment to the Commission within 14 days after the Assessment has been completed via email to DEbrief@ftc.gov or by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin, "FTC v. Family Dollar Stores, LLC, X270003." Defendant must retain an unredacted copy of each subsequent annual Assessment as well as a proposed redacted copy of each subsequent annual Assessment suitable for public disclosure for five (5) years and must provide each such Assessment to the Associate Director for Enforcement within ten (10) days of request. The initial Assessment and any subsequent annual Assessment provided to the Commission must be marked, in the upper right-hand corner of each page, with the words "Pricing Accuracy Program Assessment" in red lettering.

## IV. COOPERATION WITH THIRD-PARTY PRICING ACCURACY ASSESSOR

IT IS FURTHER ORDERED that, Defendant, whether acting directly or indirectly, in connection with any Assessment required by Section III of this Order:

A. Provide or otherwise make available to the Assessor all information and material in their possession, custody, or control that is relevant to the Assessment for which there is no reasonable claim of privilege; and

B. Disclose all material facts to the Assessor, and not misrepresent in any manner, expressly or by implication, any fact material to the Assessor's: (1) determination of whether Respondents have implemented and maintained the Pricing Accuracy Program; (2) assessment of the effectiveness of Defendant's implementation and maintenance of sub-sections D.1-13 of the required Pricing Accuracy Program; or (3) identification of any gaps or weaknesses in, or instances of material noncompliance with, the Pricing Accuracy Program.

## V. ANNUAL CERTIFICATION

IT IS FURTHER ORDERED that Defendant must:

A. One year after the issuance date of this Order, and each year thereafter for four (4) additional years, provide the Commission and State Plaintiffs with a certification from the senior officer responsible for Defendant's Pricing Accuracy Program that: (1) Defendant has established, implemented, and maintained the requirements of this Order; (2) Defendant is not aware of any material noncompliance that has not been (a) corrected or (b) disclosed to the Commission; and (3) includes a brief description of all Reportable Incidents that Defendant verified or confirmed during the certified period. The certification must be based on their own personal knowledge, or the personal knowledge of subject matter experts upon whom the senior officer reasonably relied in making the certification.

B. Unless otherwise directed by a Commission representative in writing, submit all annual certifications to the Commission pursuant to this Order via email to DEbrief@ftc.gov or by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement,

Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin, "FTC v. Family Dollar Stores, LLC, X270003."

## VI. REPORTABLE INCIDENTS

IT IS FURTHER ORDERED that, for five (5) years after the issuance date of this Order, Defendant, within thirty (30) days of Defendant's determination of the occurrence of a Reportable Incident, must submit a report to the Commission and the Assessor. The report must include, to the extent possible:

A. The date, estimated date, or estimated date range when the Reportable Incident occurred;

B. A description of the facts relating to the Reportable Incident, including, if known, the causes of the Reportable Incident; and

C. The acts that Defendant has taken to remediate the Reportable Incident; and

Unless otherwise directed by a Commission representative in writing, all Reportable Incident reports to the Commission pursuant to this Order must be emailed to Debrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue, NW, Washington, DC 20580. The subject line must begin, "FTC v. Family Dollar Stores, LLC, X270003."

## VII. IN-STORE NOTICE TO CUSTOMERS

IT IS FURTHER ORDERED that, within 14 days of entry of this Order, Defendant must post Clearly and Conspicuously on the front door of its stores, at each register of its stores, any screen of its websites or apps where consumers first access or encounter Defendant's products or services in Defendant's stores, an exact copy of the notice attached hereto as Attachment A

("Notice"). Defendant must leave this Notice in place until the earlier of (a) the close of the claims submission period described in Section XI.B, or (b) the date on which Defendant has distributed $40,000,000 in Redress Payments from the Consumer Redress Fund. Defendant shall not include with the Notice any other documents, attachments, hyperlinks, or other information.

## VIII. MONETARY JUDGMENTS

IT IS FURTHER ORDERED that Defendant is subject to $63,000,011.36 in judgments as follows:

A. Judgment in the amount of Sixty Million Dollars ($60,000,000) is entered in favor of the Commission against Defendant as monetary relief. Defendant is ordered to satisfy the Judgment as follows:

1. Within 14 days of entry of this Order, Defendant must establish a Consumer Redress Fund through which Defendant or its independent, third-party claims administrator will offer Forty Million Dollars ($40,000,000) in Redress Payments to Eligible Consumers in accordance with Sections X and XI of this Order.

2. Within 90 days of entry of this Order, Defendant must implement and complete a Discount Program under which Defendant will offer consumers a total of Twenty Million Dollars ($20,000,000) in discounts on goods or services purchased at Defendant's stores. The Discount Program must satisfy the following requirements:

a. The Discount Program must apply a fixed-percentage reduction of fifteen percent (15%) to the current retail price of goods or services offered for sale by Defendant, excluding alcohol, tobacco, gift cards, and other prepaid cards. The discount percentage must be established before the applicable discount is offered, may not be changed retroactively, and must be offered for a period of two (2) consecutive days;

b. For each qualifying transaction under the Discount Program, the amount of the discount must equal the difference between the price at which the product or service was offered immediately before the discount and the price actually paid by the consumer after applying the discount. Defendant must record the discount in dollars and, where applicable, as a percentage of the pre-discount price;

c. Only discounts that are offered and administered specifically as part of the Discount Program may be counted toward the $20,000,000 monetary judgment. Discounts, promotions, credits, rebates, loyalty benefits, store-specific price reductions, or other savings that Defendant planned, offered, or administered independently of the Discount Program may not be counted, even if they occur during the same period;

d. Defendant must maintain records sufficient to show the total dollar value of qualifying discounts provided under the Discount Program, and that each qualifying discount was calculated using the price immediately preceding the discount and was not based on an inflated or otherwise unavailable price. The records must be reconciled with Defendant's point-of-sale and accounting records; and

e. Before implementing the Discount Program, Defendant must submit, in writing, to the Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, a description of the proposed program, including: (1) the goods or services to which the Discount Program will apply; (2) the fixed discount percentage or percentages proposed; (3) the dates and locations during which the program will be administered; (4) the method Defendant will use to calculate and track qualifying discounts; and (5) the controls Defendant will use to prevent independent discounts or other planned promotions from being counted under the program. All aspects of the Discount Program, including its terms,

administration, calculation and tracking methods, controls, notices, instructions, forms, and communications to consumers, are subject to review and approval by the Associate Director of Enforcement, Bureau of Consumer Protection, Federal Trade Commission. Defendant must obtain such approval before implementing or administering the Discount Program or transmitting any notices, instructions, forms, or communications to consumers.

B. Judgment in the amount of $3,000,011.36 is entered in favor of the State Plaintiffs against Defendant (the "Payment to the States"), which is to be divided among the State Plaintiffs. Defendant is ordered to pay the State Plaintiffs $3,000,011.36, which, as Defendant stipulates, their undersigned counsel holds in escrow for no purpose other than payment to the State Plaintiffs. Such payment shall be distributed in the manner and for the purposes specified in this Order and in Attachment B. Such payment shall be made within 7 days of entry of the Order by electronic fund transfer in accordance with instructions provided by the representatives of each State Plaintiff.

## IX. ADDITIONAL MONETARY PROVISIONS

IT IS FURTHER ORDERED that:

A. Defendant relinquishes dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

B. The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission or the State Plaintiffs in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

C. The facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

D. Defendant acknowledges that Defendant's Employer Identification Number, or other Taxpayer Identification Number ("TIN"), including all TINs that Defendant previously provided, may be used by the Commission and the State Plaintiffs for reporting and other lawful purposes, including collecting on any delinquent amount arising out of this Order in accordance with 31 U.S.C. §7701.

## X. SETTLEMENT PROGRAM

IT IS FURTHER ORDERED that the distribution of Redress Payments from the Consumer Redress Fund and operation of the Discount Program described in Section VIII.A.1-2, shall be conducted by Defendant, with Redress Payments under the supervision of an independent, third-party claims administrator, through this Settlement Program. As part of this Settlement Program, Defendant must:

A. Within 14 days of entry of this Order, provide notice to Eligible Consumers of this Settlement, their rights under this Order, instructions for accessing or requesting a claims form, and instructions for submitting a claims form to seek compensation from the Consumer Redress Fund. To comply with this notice requirement, Defendant shall:

1. Post links to the settlement website established by Defendant pursuant to Section X.B below on both the landing page of https://www.familydollar.com and a similar page on the mobile application. The links to the settlement website shall remain posted on the landing page and mobile application for 30 days after it is first displayed; and

2. Provide notice to Eligible Consumers of the settlement website, as well as instructions for requesting and submitting a claims form, at each of Defendant's stores, including at every entrance, at each register, and in digital weekly circulars. The content and format of notices, instructions, forms, and communications required under this Subsection are subject to review and approval by the Associate Director of Enforcement, Bureau of Consumer Protection, Federal Trade Commission, and Defendant must obtain that approval before transmitting notices, instructions, forms, or communications to Eligible Consumers. Such notice shall remain displayed at each of Defendant's stores and included in the digital weekly circulars until the earlier of (a) the close of the claims submission period described in Section XI.B, or (b) the date on which Defendant has distributed $40,000,000 in Redress Payments from the Consumer Redress Fund;

B. Establish a settlement website through which Defendant will administer a Claims Process and provide Eligible Consumers with information about the settlement of this action, to their rights under this Order, instructions for requesting and submitting a claims form to seek compensation from the Consumer Redress Fund, the ability for Eligible Consumers request re-issuance of previously unredeemed Redress Payments, and a dedicated phone number monitored by the third-party claims administrator. The settlement website must remain live and publicly available for the duration of the Settlement Program or until Defendant has distributed $40,000,000 in Redress Payments from the Consumer Redress Fund, whichever is earlier. The content and format of the settlement website is subject to review and approval by the Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, and Defendant must obtain that approval before making the website accessible to the public;

C. Within 30 days of entry of this Order, provide notice of the Discount Program, including by displaying the notice on the landing page of https://www.familydollar.com, a similar page on the mobile application, in digital weekly circulars, and at the entrance or register of each of Defendant's stores. The notice shall be posted at least 14 days before the start of the Discount Program. The content and format of notices, instructions, forms, and communications required under this Subsection are subject to review and approval by the Associate Director of Enforcement, Bureau of Consumer Protection, Federal Trade Commission, and Defendant must obtain that approval before displaying or sending such notices, instructions, forms, or communications. In addition, the notice shall remain displayed until the Discount Program is completed;

D. Pay for all costs, fees, and expenses relating to the operation of the Settlement Program for its entire duration. Any such costs, fees, and expenses incurred by Defendant are the sole responsibility of Defendant, and shall not be paid out of, or deducted from, the Consumer Redress Fund or the Discount Program;

E. Distribute redress to Eligible Consumers from the Consumer Redress Fund through Redress Payments;

F. Refrain from engaging in any effort to dissuade Eligible Consumers from participating in the Settlement Program;

G. Within 90 days of the entry of this Order, every 90 days thereafter, and at the completion of the Settlement Program, submit a report to the Commission describing in detail whether and how the Settlement Program is in compliance with the Order and summarizing the Settlement Program to date, including, on a monthly basis: the number of claims forms received; the number of claims from Eligible Consumers approved or rejected; the number of claims paid

from the Consumer Redress Fund; the number of Redress Payments issued, redeemed, rejected, reissued, or voided; the total dollar amount of distributions from the Consumer Fund; and any next steps under the Settlement Program or Consumer Redress Fund Distribution Process; and

H. Within 12 months from the date of entry of this Order, complete all requirements for the Settlement Program and Consumer Redress Fund Distribution Process.

## XI. CONSUMER REDRESS FUND DISTRIBUTION PROCESS

IT IS FURTHER ORDERED that:

A. Within 30 days of entry of this Order, Defendant shall establish and administer a Claims Process that offers Redress Payments to Eligible Consumers from the Consumer Redress Fund.

B. The Claims Process shall operate as follows:

1. Defendant must hire an independent, third-party claims administrator;

2. The third-party claims administrator shall distribute a claims form that allows consumers to: (a) attest that they fall within the definition of Eligible Consumers; and (b) provide identifying information sufficient for Defendant's third-party claims administrator to distribute Redress Payments under the Consumer Redress Fund. The method, medium, format, and content of the claims form must be approved, in writing, by the Associate Director of Enforcement, Bureau of Consumer Protection, Federal Trade Commission;

3. Eligible Consumers will have up to 180 days after the claims form is first made available to Eligible Consumers to submit it to Defendant's third-party claims administrator in accordance with the method and medium approved, in writing, by the Associate Director of Enforcement, Bureau of Consumer Protection, Federal Trade Commission;

4. For any claims form received from an Eligible Consumer, Defendant's third-party claims administrator will have up to 30 days to review the claims form to determine whether the Eligible Consumer's claim is valid; and

5. Defendant shall issue Redress Payments, on a rolling basis, for any valid claim made by an Eligible Consumer, up to $40,000,000 in Redress Payments from the Consumer Redress Fund.

## XII. ORDER ACKNOWLEDGMENTS

IT IS FURTHER ORDERED that Defendant obtain acknowledgments of receipt of this Order:

A. Defendant, within 7 days of entry of this Order, must submit to the Commission and State Plaintiffs an acknowledgment of receipt of this Order sworn under penalty of perjury.

B. For 10 years after entry of this Order, Defendant must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all regional and/or district managers of Defendant's stores with managerial responsibilities for conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting. Delivery must occur within 7 days of entry of this Order for current personnel. For all others, delivery must occur before they assume their responsibilities.

C. From each individual or entity to which a Defendant delivered a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## XIII. COMPLIANCE REPORTING

IT IS FURTHER ORDERED that Defendant make timely submissions to the Commission and State Plaintiffs:

A. One year after entry of this Order, Defendant must submit a compliance report, sworn under penalty of perjury:

1. Defendant must: (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission and State Plaintiffs may use to communicate with Defendant; (b) identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales; (d) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

B. For 10 years after entry of this Order, Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1. Defendant must report any change in: (a) any designated point of contact; or (b) the structure of any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

C. Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D. Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E. Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: FTC v. Family Dollar Stores, LLC, X270003.

## XIV. RECORDKEEPING

IT IS FURTHER ORDERED that Defendant must create certain records for 10 years after entry of the Order, and retain each such record for 5 years. Specifically, Defendant, in connection with the offering for sale or sale of goods or services in Defendant's stores, must create and retain the following records:

A. accounting records showing the revenues from all goods or services sold;

B. personnel records showing, for each person providing services, for whom records are maintained by Defendant in the ordinary course of business, whether as an employee or

otherwise, that person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C. records of all consumer complaints and refund requests concerning the subject matter of this Order, whether received directly or indirectly, such as through a third party, and any response; and

D. all records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission.

## XV. COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Defendant's compliance with this Order and any failure to transfer any assets as required by this Order:

A. Within 14 days of receipt of a written request from a representative of the Commission or State Plaintiffs, Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying. The Commission and State Plaintiffs are also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including depositions by remote means), 31, 33, 34, 36, 45, and 69.

B. For matters concerning this Order, the Commission and State Plaintiffs are authorized to communicate directly with Defendant. Defendant must permit representatives of the Commission and State Plaintiffs to interview any employee or other person affiliated with Defendant who has agreed to such an interview. The person interviewed may have counsel present.

C. The Commission and State Plaintiffs may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Defendant or any individual or entity affiliated with Defendant, without the necessity of identification or prior notice. Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

## XVI. RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**SO ORDERED this ___ day of _______________, 202__.**

_________________________________

UNITED STATES DISTRICT JUDGE

**SO STIPULATED AND AGREED:**

**FOR PLAINTIFF:**

**FEDERAL TRADE COMMISSION**

Maris Snell — Dated: 11/12/2026

Maris K.V. Snell
Federal Trade Commission
1350 Euclid Avenue, Suite 325
Cleveland, OH 44115
Phone: 202-660-8544
Email: msnell@ftc.gov

Christopher J. Erickson
Baasil Shariff
Evan M. Mendelson
Federal Trade Commission
600 Pennsylvania Avenue, NW
Washington, DC 20580
Phones: 202-677-8302 (Erickson); 202-326-2855 (Shariff); 202-326-3320 (Mendelson)
Emails: cerickson@ftc.gov; bshariff@ftc.gov; emendelson@ftc.gov

Docusign Envelope ID: 60BB4ED9-295F-8207-81FA-F1F14B590D33

**FOR DEFENDANT:**

Signed by:
9BE526A0A0D54F7... ______________________ Dated: 11/3/2026 | 7:41 PM EST

Scott Sher
Paul, Weiss, Rifkind, Wharton & Garrison LLP
2001 K St NW
Washington, DC 20006
(202) 223-7476
ssher@paulweiss.com
*Counsel for Family Dollar Stores, LLC*

**DEFENDANT FAMILY DOLLAR STORES, LLC**

Signed by:
C94AEDCFBEBD479... ______________________ Dated: 11/3/2026 | 8:00 PM EST

Keith Zanni, Chief Legal Officer
Family Dollar Stores, LLC

**FOR THE STATE OF ALABAMA:**

Steve Marshall
*Attorney General*

________________________________________ Dated: November 2, 2026

Michael G. Dean
*Assistant Attorney General*
Office of the Attorney General
Consumer Interest Division
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
(334) 353-0415
Michael.Dean@AlabamaAG.gov

Attorney for Plaintiff the State of Alabama

**FOR THE STATE OF ARKANSAS, *ex. rel.* Attorney General Tim Griffin:**

______________________________ Dated: 11/03/2026

Amanda Wentz, Ark. Bar No. 2021066
Senior Assistant Attorney General
Office of the Arkansas Attorney General
101 West Capitol Avenue
Little Rock, AR 72201
(501) 682-1178
Email: amanda.wentz@arkansasag.gov

Attorney for Plaintiff the State of Arkansas, *ex rel.* Attorney General Tim Griffin

**FOR THE COLORADO ATTORNEY GENERAL:**

Kolya D. Glick (Va. Bar No. 89196)
Senior Assistant Attorney General
Lauren M. Dickey
First Assistant Attorney General
Conor A. Kruger
Senior Assistant Attorney General
Colorado Department of Law
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 7th Floor
Denver, CO 80203
Telephone: (720) 508-6000
Email: kolya.glick@coag.gov
lauren.dickey@coag.gov
conor.kruger@coag.gov

Dated: 11/5/26

Attorneys for Plaintiff the Colorado Attorney General

**FOR THE OFFICE OF THE ATTORNEY GENERAL STATE OF FLORIDA:**

JAMES UTHMEIER
*Attorney General*

______________________________ Dated: 11/2/26

Ryan Michael Uhrig (FBN 118468)
*Special Counsel*

Victoria Ann Butler (FBN 861250)
*Director of Consumer Protection*

Florida Office of the Attorney General
3507 E. Frontage Road, Suite 325
Tampa, Florida 33607
Telephone (813) 287-7260

Attorneys for Plaintiff, the Office of the Attorney General, State of Florida, Department of Legal Affairs

**FOR THE PEOPLE OF THE STATE OF ILLINOIS:**

KWAME RAOUL
Attorney General

[signature] Dated: 11/2/2026

LINDA JUN
JACOB GILBERT
Office of the Illinois Attorney General
Consumer Fraud Bureau
115 S. LaSalle Street, 26th Floor
Chicago, IL 60603
(312)814-3000
Linda.Jun@ilag.gov
Jacob.Gilbert@ilag.gov

Attorneys for Plaintiff the People of the State of Illinois

**FOR THE STATE OF IOWA:**

BRENNA BIRD
Attorney General of Iowa

Eric Wessan
________________________________________ Dated: 11/02/2026

Eric H. Wessan
Solicitor General
1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 823-9117
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov

Counsel for State of Iowa

**FOR THE STATE OF KANSAS:**

KRIS W. KOBACH
ATTORNEY GENERAL

Dated: November 2, 2026

Kaley Schrader, KS Bar No. 27700
Assistant Attorney General
Office of the Kansas Attorney General
120 SW 10th Ave, 2nd Floor
Topeka, Kansas 66612-1597
Telephone: (785) 296-3751
Fax: (785) 291-3699
Email: kaley.schrader@ag.ks.gov

Attorney for Plaintiff the State of Kansas, *ex rel.* Kris W. Kobach, Attorney General

**FOR THE STATE OF LOUISIANA:**

LIZ MURRILL
ATTORNEY GENERAL

Hanna Thomas
Hanna W. Thomas, La. Bar No. 32082
Assistant Attorney General Specialist
Louisiana Department of Justice
Public Protection Division
1885 North 3rd Street, 4TH Floor (70802)
Post Office Box 94005
Baton Rouge, Louisiana 70804-9005
Telephone: (225) 326-6438
Facsimile: (225) 326-6499
Email: ThomasH@ag.louisiana.gov

Dated: 11-2-2026

Attorney for Plaintiff the State of Louisiana

**FOR THE STATE OF MISSISSIPPI:**

LYNN FITCH
ATTORNEY GENERAL

Sandra D. Buchanan Dated: 11/3/26

Sandra D. Buchanan, MSB# 100864
Consumer Protection Division
Mississippi Attorney General's Office
Post Office Box 220
Jackson, Mississippi 39205
Phone: 601-359-4223
Email: sandra.buchanan@ago.ms.gov

Attorney for Plaintiff the State of Mississippi

**FOR THE STATE OF NEBRASKA:**

MICHAEL T. HILGERS
Attorney General of Nebraska

Dated: November 2, 2026

______________________________
Michael A. Greenlee (NE #24333)
Assistant Attorney General
Consumer Protection Bureau
Office of the Nebraska Attorney General
2115 State Capitol
Lincoln, Nebraska 68508
Telephone: (402) 471-3840
Fax: (402) 471-4725
michael.greenlee@nebraska.gov

Attorney for Plaintiff the State of Nebraska

**FOR THE STATE OF OHIO:**

D. ANDREW WILSON
Attorney General
State of Ohio

[signature]

Andrew D. Neuhauser (Ohio Bar No. 0082799)
Paige E. Weinstein (Ohio Bar No. 0098371)
Assistant Attorneys General
Consumer Protection Section
Ohio Attorney General's Office
30 East Broad Street
Columbus, Ohio 43215
Telephone: 614-644-9618
Facsimile: 866-921-9921
Andrew.Neuhauser@OhioAGO.gov
Paige.Weinstein@OhioAGO.gov

Attorneys for Plaintiff the State of Ohio ex rel.
Attorney General D. Andrew Wilson

Dated: 11-02-2026

**FOR THE STATE OF OKLAHOMA:**

GENTNER DRUMMOND
OKLAHOMA ATTORNEY GENERAL


______________________________ Dated: 11/2/24

Cameron R. Capps
Deputy Attorney General
Kristin Siegel
Assistant Attorney General
313 NE 21st Street
Oklahoma City, Oklahoma 73105
Telephone: (405) 522-9052
Facsimile: (405) 521-3921
Email: Cameron.Capps@oag.ok.gov
Kristin.Siegel@oag.ok.gov


Attorneys for Plaintiff State of Oklahoma

**FOR THE COMMONWEALTH OF PENNSYLVANIA:**

DAVID W. SUNDAY, JR.
Attorney General for the Commonwealth of Pennsylvania

Jaimie George

______________________________ Dated: 11/2/2026

Jaimie L. George
Deputy Attorney General
Pennsylvania Office of Attorney General
1251 Waterfront Place, Mezzanine Level
Pittsburgh, PA 15222
Tel: (412) 565-7680
Fax: (412) 565-3019

Attorney for Plaintiff the Commonwealth of Pennsylvania

**FOR THE STATE OF SOUTH CAROLINA:**

ALAN WILSON
Attorney General

______________________________ Dated: 11/2/2026
Jared Q. Libet
Assistant Deputy Attorney General
Jordan Martin
Assistant Attorney General
Office of the South Carolina Attorney General
Consumer Protection & Antitrust Division
Telephone: (803) 734-5251
Email: jlibet@scag.gov
Email: jordanmartin@scag.gov

Attorneys for Plaintiff the State of South Carolina

**FOR THE STATE OF TENNESSEE:**

JONATHAN SKRMETTI
Attorney General and Reporter

Hannah G. Murray ____________________ Dated: 11/2/2026 ____________

Hannah G. Murray
Daimon S. Duggar
Office of the Tennessee Attorney General
Public Protection Section
Consumer Protection Division
P.O. Box 20207
Nashville, TN 37202-0207
Phones: 615-253-4146 (Murray);
615-253-5830 (Duggar)
Emails: Hannah.Murray@ag.tn.gov;
Daimon.Duggar@ag.tn.gov

Attorneys for Plaintiff the State of Tennessee, *ex rel.* Jonathan Skrmetti, Attorney General and Reporter

**FOR THE UTAH DIVISION OF CONSUMER PROTECTION:**

DEREK E. BROWN
UTAH ATTORNEY GENERAL

Dated: 11/2/2026

Douglas Crapo
Public Protection Deputy Attorney General
Alexandra Butler
Assistant Attorney General
160 East 300 South, 5th Floor
Salt Lake City, Utah 84114
(801) 366-0310
alexandrabutler@agutah.gov

Attorney for Plaintiff the Utah Division of Consumer Protection

**FOR THE STATE OF WISCONSIN:**

JOSHUA L. KAUL
Attorney General of Wisconsin

Dated: 11/2/2026

LAURA E. MCFARLANE
Assistant Attorney General
State Bar #1089358
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-8911
(608) 294-2907 (Fax)
laura.mcfarlane@wisdoj.gov

Attorney for Plaintiff the State of Wisconsin

**ATTACHMENT A**

[To appear with the Family Dollar Stores, LLC logo]

# REFUNDS FOR FAMILY DOLLAR CUSTOMERS

The Federal Trade Commission, 17 State Attorneys General, and Family Dollar have agreed to settle charges that Family Dollar sometimes charged customers more than the listed price for a product between 2023 and 2026.

As part of the settlement, monetary relief is available to eligible Family Dollar customers.

To submit a claim, go to
short URL link.

To learn more about the settlement, go to ftc.gov and search for "Family Dollar."

## ATTACHMENT B

Pursuant to Section VIII.B of the Stipulated Order for Permanent Injunction, Monetary Judgment, and Other Relief ("Stipulated Order"), Defendant shall pay $3,000,011.36 to the State Plaintiffs, which is to be divided as follows:

| State Plaintiff | Payment Language |
|---|---|
| Alabama | Payment by Defendant of $160,265.97 shall be made to the Office of the Alabama Attorney General to be used in the Attorney General's sole discretion for any lawful purpose. |
| Arkansas | The payment of $95,321.59 received by the Attorney General may be used for purposes that may include, but are not limited to, attorneys' fees, and other costs of investigation and litigation, or may be placed in, or applied to, any consumer protection law enforcement fund, including future consumer protection or privacy enforcement, consumer education or redress, litigation or local consumer aid fund or revolving fund, used to defray the costs of the inquiry leading hereto, and/or for other uses permitted by state law, at the sole discretion of the Attorney General. |
| Colorado Attorney General | Defendant shall pay $87,989.16 to the Colorado Department of Law. Any payment Defendant makes pursuant to this Stipulated Order to the Colorado Department of Law is to be held, along with any interest thereon, in trust by the Colorado Attorney General to be used in the Colorado Attorney General's sole discretion for reimbursement of the State's actual costs and attorney's fees, the payment of restitution, if any, and for future consumer fraud or antitrust enforcement, consumer education, or public welfare purposes. |
| Florida | Defendant shall pay $506,985.16 to Plaintiff, Office of the Attorney General, State of Florida, Department of Legal Affairs, by wire transfer, certified funds or cashier's check, payable to the Department of Legal Affairs, and shall be sent to the Office of the Attorney General, Attention: Victoria Butler, Director, Consumer Protection Division. The money received by Florida may be used for purposes that may include, but are not limited to, attorneys' fees, and other costs of investigation and litigation, or be placed in, or applied to, any consumer protection enforcement or revolving fund, future consumer protection or privacy enforcement or litigation, consumer education, or for other uses permitted by state law, at the sole discretion of the Plaintiff. |

| | |
|---|---|
| Illinois | Defendant shall pay $188,548.20 to the People of the State of Illinois as a voluntary contribution to the Attorney General Court Ordered and Voluntary Compliance Payment Projects Fund. The payment shall be made out to the "Attorney General Court Ordered and Voluntary Compliance Fund," in accordance with payment instructions separately provided by Plaintiffs. Such funds may be used by the Illinois Attorney General for any lawful purpose as authorized Section 7(e) of the Consumer Fraud Act, 815 ILCS 505/7(e). Defendants shall not be entitled to further accounting regarding the money deposited into this account. |
| Iowa | Defendant shall pay $49,232.03 to the State of Iowa, which shall be directed to the credit of the consumer education and litigation fund established under Iowa Code section 714.16C. |
| Kansas | Defendant shall pay $46,089.56 to the Office of the Kansas Attorney General. Said payment shall be used by the Kansas Attorney General for any lawful purpose including, but not limited to attorneys' fees and other costs of investigation and litigation, or to be placed in, or applied to, the consumer protection law enforcement fund, including future consumer protection enforcement, consumer education, litigation or local consumer aid fund or revolving fund, used to defray the costs of the inquiry leading hereto or for other uses permitted by state law, at the sole discretion of the Attorney General. |
| Louisiana | Defendant shall pay $271,299.91 to the State of Louisiana, Department of Justice, Office of the Attorney General. The Attorney General has the sole discretion to use said payments for such purposes that may include, but are not limited to, attorney fees and other costs of investigation and/or litigation, or to be placed in, or applied to, the consumer protection law enforcement fund, including (i) future consumer protection enforcement, consumer education, litigation, or local consumer aid fund, or revolving fund, (ii) for general compensatory or remedial purposes, including, but not limited to, defraying the costs of the inquiry leading hereto, monitoring and potential enforcement of this settlement, and/or (iii) for any other purpose permitted by state law. |
| Mississippi | Defendant shall pay $181,215.77 to Mississippi. Said payment shall be deposited into the Attorney General of Mississippi Contingent Fund for purposes permitted by state law, at the sole discretion of the Mississippi Attorney General. |
| Nebraska | Defendant shall pay $36,662.15 to the State of Nebraska. Said payment shall be deposited to the State Settlement Cash Fund and used by the Attorney General for any lawful purpose at the sole discretion of the Attorney General. |

| | |
|---|---|
| Ohio | Defendants shall pay the Ohio Attorney General's Office $382,333.85 to be deposited into the Consumer Protection Enforcement Fund, established pursuant to R.C. 1345.51 and used as set forth therein. |
| Oklahoma | Defendant shall pay $157,123.50 to the Oklahoma Attorney General. For the State of Oklahoma, the amount paid to the Oklahoma Attorney General shall be used for attorneys' fees and other costs of investigation and litigation, or for use in future consumer protection enforcement, consumer education, investigation, litigation, monitoring and potential enforcement of this Settlement Agreement, or for other uses permitted by state law, at the sole discretion of the Oklahoma Attorney General. |
| Pennsylvania | Defendant shall pay $267,109.95 to the Pennsylvania Office of Attorney General for future public protection purposes. The payment shall be used at the sole discretion of the Pennsylvania Attorney General, including but not limited to consumer protection enforcement or consumer education, to defray the costs of the inquiry leading hereto, monitoring and potential enforcement of this Order, or for any other public purpose permitted by applicable state law. |
| South Carolina | Defendant shall pay $245,112.66 to the South Carolina Attorney General. The payment shall be used at the sole discretion of the South Carolina Attorney General for any lawful purpose including, but not limited to, attorneys' fees and other costs of investigation and litigation, or to be placed in, or applied to. the consumer protection law enforcement fund, including future consumer protection enforcement, consumer education, litigation or local consumer aid fund or revolving fund, used to defray the costs of the inquiry leading hereto or for other uses permitted by state law. |
| Tennessee | Defendant shall pay $155,028.52 to the State of Tennessee. Said payment shall be used by the Attorney General for any lawful purpose at the sole discretion of the Attorney General. |
| Utah | Defendant shall pay $57,611.95 to the Utah Division of Consumer Protection, in accordance with Section VIII.B of this Order, to be deposited into the Attorney General Litigation Fund in accordance with Utah Code section 67-5-40(2). |

| | |
|---|---|
| Wisconsin | Pursuant to Section VIII.B of this Order, payment in the amount of $112,081.43 to the Wisconsin Department of Justice may be used for purposes that may include, but are not limited to, attorneys' fees and other costs of investigation and litigation, or may be placed in, or applied to, any consumer protection fund, including future consumer protection enforcement, consumer education or redress, litigation or local consumer aid fund or revolving fund, used to defray the costs of the inquiry leading hereto, and/or for other uses permitted by state law, at the sole discretion of the Attorney General. |